```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 3 0 2015
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Joel R. McDonald, a/k/a Joel Mac,

                Plaintiff,

    –v–

Kanye West, *et al.*,

                Defendants.

14-cv-8794 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

    Joel R. McDonald, a musician who performs as "Joel Mac," brings this copyright action against Kanye West, Shawn Carter ("Jay Z"), Frank Ocean, Mike Dean, Shama Joseph, and related music industry defendants involved in creating the 2011 album *Watch the Throne*. Plaintiff Joel Mac claims that Defendants infringed his copyright by willfully copying his original song "Made in America" to create a track with the same title on *Watch the Throne*. *See* 17 U.S.C. § 501. Defendants moved to dismiss the complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief could be granted. For the reasons discussed below, Defendants' motion to dismiss is granted.

## I. Background

    For the purpose of resolving Defendants' motion to dismiss, the Court accepts all well-pleaded facts in the Amended Complaint as true, and draws all reasonable inferences in Plaintiff's favor.

    Plaintiff wrote and recorded the album *Joel Mac Songs* in his apartment in 2008. Am. Compl. ¶ 23. In addition to selling his album on iTunes and the website CD Baby, Plaintiff

independently pressed copies of his album to CD, and spent long hours in front of the Mercer Hotel on the corner of Prince and Mercer Streets in Manhattan selling the album beginning in 2008. *Id.* ¶¶ 24–27. According to Plaintiff, he became known for his music among residents of the neighborhood and guests at the Mercer Hotel. *Id.* ¶ 27.

Toward the end of 2010, Defendants rented a dozen rooms at the Mercer Hotel in order to write, record, mix, and produce the album *Watch the Throne*, which was released on August 8, 2011. *Id.* ¶¶ 28–29, 32. While the Defendants were staying at the hotel in the period between late 2010 and 2011, Plaintiff regularly interacted with Defendant Mike Dean. *Id.* ¶ 31. At some point, Dean bought a copy of Plaintiff's album, *Joel Mac Songs*. *Id.* ¶ 30.

The second track on *Joel Mac Songs* is what Plaintiff calls a "slow moving, yet powerful and reflective track" entitled "Made in America." *Id.* ¶ 23. It did not escape Plaintiff's notice that Track 11 on Defendants' album, *Watch the Throne*, was also entitled "Made in America." *Id.* ¶ 32. On the strength of *Watch the Throne*, Defendants embarked on a tour of the same name from October 2011–June 2012, grossing $48.3 million. *Id.* ¶ 33.

Plaintiff filed this lawsuit on November 4, 2014, and Defendants moved to dismiss the amended complaint on February 25, 2015. Defendants attached to their motion exhibits containing the lyrics to both songs, and a CD containing audio recordings of both.

## II.  Discussion

When a defendant moves to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009) (internal quotation marks omitted). The complaint will survive the motion to dismiss as long as it contains "sufficient factual matter, accepted as true, to

2

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

In addition to the text of the complaint, the Court may consider documents attached as exhibits, incorporated by reference, or that are "integral" to the complaint. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). In a copyright infringement action, "the works themselves supersede and control contrary descriptions of them" contained in the pleadings or elsewhere. *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010). Courts in this district regularly apply this rule in music copyright cases to listen to the songs at issue when evaluating a motion to dismiss. *See, e.g., Edwards v. Raymond*, 22 F. Supp. 3d 293, 297 (S.D.N.Y. 2014); *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592–93 (S.D.N.Y. 2013); *Pyatt v. Raymond*, No. 10-cv-8764, 2011 WL 2078531, at *4 (S.D.N.Y. May 19, 2011). The text and lyrics of the two songs at issue in this case were not attached to the complaint, but they were incorporated via reference through links to Youtube videos of performances of both works. *See* Am. Compl. ¶ 3, 6. Plaintiff also clearly relied upon the works in bringing his claim. The Court will therefore consider them when evaluating the motion to dismiss. *See Edwards*, 22 F. Supp. 3d at 297.

### A. The Legal Standard for Copyright Infringement

To state a claim for copyright infringement, a plaintiff must plausibly allege facts that demonstrate (1) ownership of a valid copyright, and (2) the defendants' copying of constituent, original elements of plaintiff's copyrighted work. *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). To demonstrate the element of unauthorized copying, Plaintiff must make two showings. First, he must show that Defendants "actually copied" his work, and second, he must show substantial similarity between the two works such that the copying

3

"amounts to an improper or unlawful appropriation." *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003) (internal quotation marks omitted). For the purposes of this motion, Defendants do not challenge the validity of Plaintiff's copyright, nor do they contest Plaintiff's allegations of actual copying. The Court will therefore focus on whether there is substantial similarity between Plaintiff's and Defendants' music.

District courts in this circuit may evaluate a question of substantial similarity at the motion to dismiss stage under Rule 12(b)(6). *See Peter F. Gaito*, 602 F.3d at 64. When evaluating substantial similarity on a motion to dismiss, "no discovery or fact-finding is typically necessary, because what is required is only a visual [or aural] comparison of the works." *Id.* (internal quotation marks omitted). "If, in making that evaluation, the district court determines that the two works are not substantially similar as a matter of law, the district court can properly conclude that the plaintiff's complaint, together with the works incorporated therein, do not plausibly give rise to an entitlement to relief." *Id.* (citation and internal quotation marks omitted). Two works are not substantially similar as a matter of law if "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or [if] no reasonable jury, properly instructed, could find that the two works are substantially similar." *Id.* at 63 (quoting *Warner Bros. v. Am. Broad. Cos.*, 720 F.2d 231, 240 (2d Cir. 1983)). In the discussion that follows, the Court considers the two parts of this standard: first, which elements of Plaintiff's song are protected by copyright, and which are not; and second, whether there is substantial similarity, as properly considered under the 12(b)(6) standard, between the works at issue in this case.

### 1. Original Expression

Not every aspect of every creative work is protected by copyright. The law regulates only the copying of the plaintiff's <u>original</u> <u>expression</u>. Each of those words is significant. First, copyright protects only that which is original. *Feist*, 499 U.S. at 345. Originality entails independent creation by the author, and "at least some minimal degree of creativity." *Id.* However, it is "universally true" that even creative works contain material that is not original, because "all creative works draw on the common wellspring that is the public domain." *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 132 (2d Cir. 2003).

This principle excludes from copyright the "raw materials" of art, like colors, letters, descriptive facts, and standard geometric forms, as well as previous creative works that have fallen into the public domain. *Id.* It likewise excludes the basic building blocks of music, including tempo and individual notes. *See Currin v. Arista Records, Inc.*, 724 F. Supp. 2d 286, 293 (D. Conn. 2010) (tempo unprotectable); *Poindexter v. EMI Record Grp.*, No. 11-cv-559, 2012 WL 1027639, at *4 (S.D.N.Y. Mar. 27, 2012) (note unprotectable). Words and short phrases, including titles and slogans, rarely if ever exhibit sufficient originality to warrant copyright protection. *Bell v. Blaze Magazine*, No. 99-cv-12342, 2001 WL 262718, at *2 (S.D.N.Y. Mar. 16, 2001) (citing *Arica Inst. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir. 1992)); 37 C.F.R. § 202.1(a). Longer phrases are also not protectable if they are common or cliché. *See Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 143–44 (2d Cir. 1998) (holding the phrase "you've got to stand for something, or you'll fall for anything" unprotectable). For the same reason, common rhythms, song structures, and harmonic progressions are not protected. *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282 (S.D.N.Y. 1991); *Velez v. Sony Discos*, No. 05-cv-615, 2007 WL 120686, at *12 (S.D.N.Y. Jan. 16, 2007).

Importantly, copyright can protect an author's original contribution to "a compilation of unprotectable elements"—specifically, "the original way in which the author has selected, coordinated, and arranged the elements of his or her work." *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1004 (2d Cir. 1995) (internal quotation marks omitted). Thus, uncopyrightable notes can be assembled into a copyrightable melody. Even a commonplace, public domain melody could become part of a copyrightable musical composition when combined in an original way with other elements of songwriting like harmony, rhythm, and structure. Turning to lyrics, though an "'ordinary'[i.e., uncopyrightable] phrase may be quoted without fear of infringement, a copier may not quote or paraphrase the sequence of creative expression that includes such a phrase." *Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987).

Second, copyright does not protect ideas, only their expression. *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996); 17 U.S.C. § 102(b). Themes fall into the category of uncopyrightable ideas. *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48–49 (2d Cir. 1986); *see also Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 979 (2d Cir. 1980) (distinguishing between "themes, facts, and scenes a faire on the one hand, and copyrightable expression on the other"). For the same reason, copyright does not protect styles, but only particular original expressions of those styles. *Judith Ripka Designs, Ltd. v. Preville*, 935 F. Supp. 237, 248 (S.D.N.Y. 1996).

### 2. Substantial Similarity

To show unlawful copying, a plaintiff must demonstrate "substantial similarity" between defendant's work and protectable elements of his own. *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001). The standard for substantial similarity is, in turn, "whether an ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and

regard the aesthetic appeal as the same." *Peter F. Gaito*, 602 F.3d at 66 (brackets and internal quotation marks omitted). This is referred to as the "ordinary observer" test. The classic formulation in music cases is whether the "defendant took from plaintiff's work so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." *Repp v. Webber*, 132 F.3d 882, 889 (2d Cir. 1997) (alteration in original) (quoting *Arnstein v. Porter*, 154 F.2d 464, 473 (2d Cir. 1946)).

When a plaintiff alleges infringement of a copyrighted work that incorporates significant elements from the public domain, however, the "ordinary observer" test must become "more discerning." *Boisson*, 273 F.3d at 272. It would be unfair to impose copyright liability if the defendant copied something from the plaintiff that the latter had no right to control. Applying this "more discerning observer" test, the Court must look for substantial similarity between the allegedly infringing work and the original, protected elements of the plaintiff's creation. *Id.*

If a defendant copies a specific original piece of a plaintiff's work, that alone (depending on the facts) may be enough to create substantial similarity between the two pieces. However, a court applying the "more discerning observer" test may not simply "dissect the works at issue into separate components and compare only the copyrightable elements." *Id.* This would narrow copyright too much, and render protection for the selection and arrangement of public domain elements a dead letter. *Id.* When applying the "more discerning observer" test, the Court must make sure to engage in a holistic comparison of the two works, looking for substantial similarity that is apparent "only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components] . . . —are considered in relation to one another." *Peter F. Gaito*, 602 F.3d at 66 (alterations in original)

(quoting *Tufenkian*, 338 F.3d at 134). Only then can the Court determine whether any similarities "are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." *Tufenkian*, 338 F.3d at 134.

### B. Analysis

As explained above, the Court can evaluate issues of substantial similarity at the motion to dismiss stage by reviewing the complaint and the works at issue in the case. *See Peter F. Gaito*, 602 F.3d at 64; *Edwards*, 22 F. Supp. 3d at 298; *TufAmerica*, 968 F. Supp. 2d at 595; *Pyatt*, 2011 WL 2078531, at *5. If the Court determines (1) that any similarity between the two works concerns only non-copyrightable parts of Plaintiff's song, or (2) that no reasonable jury properly instructed could find substantial similarity on the facts of this case, then the two songs are not substantially similar as a matter of law. Under such circumstances, Plaintiff will have failed to plausibly allege infringement of his copyright, and the Court must dismiss his claim.

Plaintiff alleges that Defendants' song "Made in America" is an unlawful copy of his own song by the same name. Plaintiff points to a variety of specific musical and lyrical features in Defendants' song that he claims were lifted directly from his music. He also argues that the two songs are substantially similar when viewed as complete works. This section will proceed by reviewing each of Plaintiff's claims in turn to determine whether they allege the copying of protected expression, and whether a reasonable jury could use any or all of them as a basis for concluding that the two tracks are substantially similar. The Court begins with the most obvious similarity between the works: their shared title.

8

### 1. "Made in America"

The phrase "Made in America" is not copyrightable, either as a title, or as a lyric. It is far too brief, common, and unoriginal to create any exclusive right vested in Plaintiff. *See Acuff-Rose*, 155 F.3d at 143. "Made in America" is a well-known part of the national vernacular, used to advertise products as either a mark of quality or patriotism. *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 544 F. Supp. 2d 1378, 1379 (J.P.M.L. 2008) (pet food advertised as "Made in America"); *W.E. Bassett Co. v. Revlon, Inc.*, 305 F. Supp. 581, 589 (S.D.N.Y. 1969) (claim of "Made in America" on scissors); *cf. Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 30 (D.C. Cir. 2014) (en banc) (Kavanaugh, J., concurring in the judgment) ("Country-of-origin labels are of course familiar to American consumers. Made in America."). Plaintiff does not contest this analysis, acknowledging that he "is certainly not seeking to monopolize the phrase 'Made in America.'" Mem. of Law in Resp. to Def.'s Mot. to Dismiss Pl.'s First Am. Compl. ("Pl.'s Resp.") at 19. Instead, he claims a copyright in the selection and arrangement of the phrase in conjunction with other original and unoriginal elements in the song's music and lyrics. This claim will be assessed below.

### 2. Specific Allegations of Infringement

Plaintiff argues that Defendants' chorus infringes lyrics at the beginning and end of his song. The allegedly similar portions are as follows:

| Plaintiff's Lyrics | Defendants' Chorus |
|---|---|
| Yeahhhh | Sweet King Martin |
| Martin Luther King | Sweet Queen Coretta |
| Made in America | Sweet Brother Malcolm |
| JFK | Sweet Queen Betty |
| Made in America | Sweet Mother Mary |
| Malcolm X | Sweet Father Joseph |
| Made in America | Sweet Jesus |

9

| | |
|---|---|
| The Wild Wild West<br>Made in America<br>Bobby Kennedy<br>Made in America | We made it in America<br>Sweet baby Jesus, ooh<br>Oh sweet baby Jesus<br>We made it in America |
| Martin Luther King<br>Made in America<br>All sorts of things<br>Made in America<br>The Civil Rights Movement<br>Made in America | Sweet baby Jesus, ooh<br>Oh, sweet baby Jesus, ooh<br>We made it in America |

Plaintiff identifies several alleged lyrical similarities. First, both songs reference Martin Luther King, Jr., Malcolm X, and "made in America," in that order in their respective hooks. Pl.'s Resp. at 3. Second, both songs share the theme of referencing significant Americans, and imply that the named historical figures were "made in America." *Id.* Third, both songs use the M/Ma sound at the beginning of "Martin," "Malcolm," and "made" to create alliteration. *Id.*

As Plaintiff concedes, he cannot claim copyright over the names of historical figures, as those names are historical facts. *Id.* at 19; *see Oldham v. Universal Music Group*, No. 09-cv-7385, 2010 WL 4967923, at *3 (S.D.N.Y. Nov. 29, 2010) (references to Aaliyah, Tupac Shakur, and The Notorious B.I.G. not protectable). The pairing of Martin Luther King, Jr., and Malcolm X, two of the most significant leaders of the Civil Rights Movement, is certainly not an original selection and arrangement. As per the discussion of the legal standard above, a theme of "referencing significant Americans" is an uncopyrightable idea. *See Walker*, 784 F.2d at 48–49; *Hoehling*, 618 F.2d at 979.

Plaintiff's focus on alliteration is equally unavailing. True, "Martin Luther King," "Malcolm X," and "made in America" all feature the letter M. As a result, however, any song that featured all three in close succession would inevitably have some alliteration. *See Tufenkian*, 338 F.3d at 132 n.4 ("[E]ven original expression goes unprotected insofar as it is 'necessary' to something unprotectible . . . ."). Furthermore, the repeated use of the word

10

"sweet" and the phrase "sweet Jesus" in Defendants' chorus, as well as the non-alliterative titles and names, are not consistent with Plaintiff's use of alliteration.

Plaintiff also alleges a number of specific musical similarities between the two songs. First, both songs have melodic eight-bar introductions with some vocal ad lib in the background, followed by mentions of Dr. King and Malcolm X, and then "made in America" or "we made it in America," respectively. Pl.'s Resp. at 3. Second, both songs have an "anthemic feel and tone" and are "slow and contemplative" with tempos in the 82–85 beats per minute range. *Id.* Third, both songs use "shuffling percussion." *Id.* Fourth, both songs lack a pronounced bass line. *Id.* Fifth, both songs employ a technique called melisma in the hook, and use a long "a" sound at the end of "America." *Id.* Melisma is "a group of notes or tones sung to one syllable in plainsong." Webster's Third International Dictionary 1407 (2002). Sixth, both songs close with melodic eight-bar sections, followed by "made in America" or "we made it in America," respectively. Pl.'s Resp. at 3–4.

None of these allegations plausibly pleads substantial similarity. The first and sixth fail because Plaintiff cannot own the idea of an instrumental intro or outro followed by a chorus. Musical structures composed of eight-bar phrases are so commonplace that they have previously been the subject of an opinion concluding that such structures are not protectable. *Velez*, 2007 WL 120686, at *12. And Defendants' chorus is substantially more complex than simply singing "made in America" immediately after the intro/outro. The second allegation fails because feel and tone are akin to style—they are too close to ideas to be copyrighted in the abstract. Tempo, on the other hand, is a basic element of music that is part of the public domain. *See Currin*, 724 F. Supp. 2d at 294. The third allegation is inadequate because "shuffling percussion" is too vague. If Plaintiff were able to plausibly allege that Defendants copied or even paraphrased his

11

percussion, such a complaint might state a claim. *Cf. Vargas v. Pfizer*, 418 F. Supp. 2d 369 (S.D.N.Y. 2005) (denying summary judgment where Defendant copied Plaintiff's percussion pattern). As pled, however, "shuffling percussion" simply describes a rhythm's style or general feel, both uncopyrightable. The fourth allegation cannot be the basis for substantial similarity because musical compositions without a strong bass line are common. Plaintiff cannot own the absence of bass. Finally, the fifth allegation fails as well. Plaintiff cannot own a common musical technique like melisma, or the use of melisma in a chorus. Plaintiff does not argue that Defendants copied or paraphrased his specific use of melisma (as indeed they did not). Holding the final syllable of a word like "America" is also too basic and commonplace a musical technique to be protectable. Interestingly, Plaintiff actually does sing the word America in a somewhat distinctive fashion on his track, holding both the second and fourth syllables. No reasonable jury could conclude that Defendants' version sounds similar, since they only hold the last syllable.

### 3. Holistic Comparison

Having disposed of Plaintiff's claim-by-claim allegations of infringement, the Court now turns to a holistic comparison between the two songs. Even if the individual elements that make up Plaintiff's song are uncopyrightable, they may represent a protected selection and arrangement of unprotectable elements. The Court must therefore check for substantial similarity apparent "only when numerous aesthetic decisions embodied in the plaintiff's work . . . are considered in relation to one another." *Tufenkian*, 338 F.3d at 134. However, listening to the two songs side by side—as this Court may do at the motion to dismiss stage, *Peter F. Gaito*, 602 F.3d at 64—makes clear that no reasonable jury could conclude that they are substantially similar.

12

a. **Lyrics**

Beginning with Plaintiff's claim about the similarity of the lyrics, this Court concludes that no reasonable jury could find the lyrics of the two songs to be substantially similar. To put Plaintiff's claim in the best possible light, the original expression that Defendants might have taken from his lyrics is a selection and arrangement of public domain elements: the names of Martin Luther King, Jr. and Malcolm X, combined into a hook with the phrase "made in America," and a theme that he characterizes as "referencing significant Americans." Pl.'s Resp. at 3. But copyright in the selection and arrangement of public domain elements like facts and common phrases is of necessity "thin." *Tufenkian*, 338 F.3d at 136 (quoting *Feist*, 499 U.S. at 349). Defendants are free to use the same public domain elements, as long as they are not selected and arranged in the same way, *see id.*—and indeed, here they are not.

Defendants did not select the same list of individuals and concepts to invoke as Plaintiff. In addition to the two names the two songs share, Plaintiff invokes JFK, Bobby Kennedy, "the Wild Wild West," and the Civil Rights Movement. In contrast, Defendants selected Coretta Scott King, Betty Shabazz, and the biblical figures Mary, Joseph, and Jesus Christ. Where Plaintiff refers to historical figures by their common, uncopyrightable, names, Defendants describe them as "Sweet [title] [name]." This enables wordplay, as in "Sweet King Martin," which uses Dr. King's last name to suggest royalty. If Defendants had copied "Sweet King Martin" from Plaintiff, there might be a stronger case. The lyrics also do not share the same pattern. Where Plaintiff alternates names with the phrase "made in America," Defendants begin with the names of civil rights leaders and then move into alternating "we made it in America" with "sweet baby Jesus." Where Plaintiff uses the phrase "made in America," Defendants use a different phrase: "*we* made *it* in America." That the songs share their (ubiquitous, unprotectable)

13

title is not enough to overwhelm the profound dissimilarity of the two works. Insofar as Plaintiff and Defendants draw on the same public domain material, they selected and arranged it differently. And insofar as Plaintiff and Defendants share the theme of how Civil Rights figures were made in America, they expressed it differently.

Significantly, though, Plaintiff's and Defendants' songs do *not* share a theme, as a cursory read of the full lyrics (available as an appendix to this opinion) would establish to any reasonable jury. The predominant theme of Plaintiff's song is expressed in the fourth verse:

> United States of America
> Fought for independence
> What's the state of America
> Past future present
> We need to be what we say we are
> That's one nation
> Where color of skin doesn't matter
> Just one's character, yeah

The rest of the song describes various people and things as "made in America." Its references are diverse—from Martin Luther King, Jr., to the atomic bomb. The song, as expressed in the quoted verse, asks America to live up to its positive qualities, exemplified by Civil Rights era figures like Dr. King and JFK, rather than its negative ones.

Defendants' lyrics, by contrast, are more varied and more personal. The key phrase, "we made it in America," refers to the two lyricists, Kanye West and Jay Z. West's and Jay Z's verses are autobiographical. The chorus sung by Frank Ocean puts these verses in the context of the achievements of Dr. King and other icons of the Civil Rights Movement. Jay Z's verse, whose structure riffs on the pledge of allegiance, concludes "I pledge allegiance to all the scramblers/This is the Star Spangled Banner." The predominant theme of this song, then, is West and Jay Z's gritty and complicated experience of the American dream.

Finally, Defendants' lyrics outside of the specific phrases pointed to by Plaintiff have nothing in common with anything in Plaintiff's song. With different expression and a different underlying idea, no reasonable jury could find Defendants' lyrics substantially similar to the limited protected expression present in Plaintiff's selection and arrangement of public domain elements.

### b. Music

Moving from the lyrics to the music, the Court is convinced that Plaintiff has failed to plausibly allege substantial similarity. Plaintiff's specific claims of musical similarity are reprised as a stronger selection and arrangement argument in the context of the whole song. Plaintiff argues that his "use of a shuffle beat, shuffle percussion, a slow tempo, the absence of a pronounced bass line, combined with the melodic phrasing, theme . . . the Intro and Outro Segment, and their framing, are unique and distinctive." Pl.'s Resp. at 4. However, a comparison of recordings of the two songs makes clear that no reasonable jury could find them to be substantially similar. The "more discerning observer" test, which requires the Court to remain conscious of which parts of Plaintiff's expression are actually protected, is not really necessary here. Unlike the lyrics, which at least share the public domain elements of "made in America"/"we made it in America," Martin Luther King, and Malcolm X, the tracks musically have little in common beyond their genre and their uncopyrightable tempo. The alleged crossover that Plaintiff points to simply results from discussing the songs at a very high level of abstraction. *Cf. Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930) ("Upon any work . . . a great number of patterns of increasing generality will fit equally well . . . ."). In order for Plaintiff's complaint to state a claim upon which relief can be granted, the similarities between the two songs would need to go beyond such unprotectable generalities.

15

Listening to the two tracks side by side demonstrates beyond dispute how little they have in common. The songs have different melodies set over different percussion. Plaintiff's minimalist music is played on an acoustic guitar, and moves back and forth between the same two chords for the entire song. Defendants' richer instrumental consists primarily of synthesizer and samples, and unlike Plaintiff's uniform chord progression is clearly divided between verse and chorus. Plaintiff's song has a single vocalist, while Defendants' song features multiple artists and significant spoken rap. *See Edwards*, 22 F. Supp. 3d at 301 (emphasizing the difference between a track with only singing and one with a substantial rap component in rejecting substantial similarity). Contrary to Plaintiff's claims, no reasonable jury could conclude that the songs share an overall feel either. Plaintiff's track is somber and low-key, while Defendants' track is triumphant and infused with gospel sensibilities (in the chorus).

Finally, taking Plaintiff's allegations about similarities between the title, music, and lyrics together as a whole still leads to the conclusion that Plaintiff has failed to plausibly allege substantial similarity. Although it is a maxim of copyright law that "no plagiarist can excuse the wrong by showing how much of his work he did not pirate," *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936), major differences nonetheless detract from any plausible claim of substantial similarity. Where any reasonable juror would conclude—as here—that the differences are many, and what similarities exist are based on unprotectable elements, the two works are not substantially similar as a matter of law.

### III.     Conclusion

The Defendants' February 25, 2015 motion to dismiss is granted. The Clerk of Court shall close the case. This resolves Docket No. 25.

SO ORDERED.

Dated: September 30, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge


Appendix: Full lyrics to Plaintiff's and Defendants' songs

| Plaintiff's Song | Defendant's Song |
| --- | --- |
| Yeahhh | And I'll bring ya out the |
| Yeaaaahhh | Out the darkness |
|  |  |
| [Verse 1] | [Hook by Frank Ocean] |
| Martin Luther King | Sweet King Martin |
| Made in America | Sweet Queen Coretta |
| JFK | Sweet Brother Malcolm |
| Made in America | Sweet Queen Betty |
| Malcolm X | Sweet Mother Mary |
| Made in America | Sweet Father Joseph |
| The Wild Wild West | Sweet Jesus |
| Made in America | We made it in America |
| Bobby Kennedy | Sweet baby Jesus, ooh |
| Made in America | Oh sweet baby Jesus |
|  | We made it in America |
| Made in America [x2] | Sweet baby Jesus, ooh |
|  | Oh, sweet baby Jesus |
| [Verse 2] | We made it in America |
| The atomic bomb |  |
| Made in America | [Kanye West] |
| The soccer mom | I told my mama I was on the come up |
| Made in America | She said, "You going to school, I'll give you a summer" |
| Desert Storm | Then she met No I.D. and gave me his number |
| Made in America | Ten years later she driving a Hummer |
| The dress for the prom | Niggas hustle every day for a beat from Ye |
| Made in America | What I do?  Turn around gave them beats to Jay |
|  | And I'm rapping on the beat they was supposed to buy |
| Made in America [x4] | I guess I'm getting high off my own supply |
|  | Downtown mixing fabrics trying to find the magic |
| [Verse 3] | Started a little blog just to get some traffic |
| United States of America | Old folks'll tell you not to play in traffic |
| Fought for independence | A million hits and the web crashes, damn! |
| What's the state of America | South Park had them all laughing |
| Past future present | Now all my niggas designing and we all swaggin' |
| We need to be what we say we are | Ignore the critics just to say we did it |
| That's one nation | This ain't no fashion show mothafucka, we live it |
| Where color of skin doesn't matter |  |
| Just one's character, yeah | [Hook repeats] |
|  |  |
| [Verse 4] | [Jay Z] |
| Martin Luther King | I pledge allegiance to my Grandma |
| Made in America | For that banana pudding, our piece of Americana |
| All sorts of things | Our apple pie was supplied through Arm and Hammer |
| Made in America | Straight out the kitchen, shh, don't wake Nana |

| | |
|---|---|
| The Civil Rights Movement<br>Made in America<br>The race for the President<br>Made in America<br><br>Made in America **[x4]**<br><br>**[Verse 2 repeats]**<br><br>Made in America **[x4]**<br><br>Made in America | Built a republic that still stands<br>I'm trying to lead a nation, to leave to my little man's<br>Or my daughter, so I'm boiling this water<br>The scales was lopsided, I'm just restoring order<br>Hold up, here comes grandma, what's up Yaya?<br>What's that smell? Oh I'm just boiling some agua<br>No papa, bad Santa<br>The streets raised me, pardon my bad manners<br>I got my liberty chopping grams up<br>Street justice, I pray God understand us<br>I pledge allegiance to all the scramblers<br>This is the Star Spangled Banner<br><br>**[Hook repeats]**<br>Yes we did.<br><br>Sweet baby Jesus, ooh<br>Oh sweet baby Jesus<br>We made it in America<br>Sweet baby Jesus, ooh<br>Oh, sweet baby Jesus<br>We made it in America<br>Yes we did |